J. Robert Lynch, J.
This controversy has been submitted on an agreed statement of facts (CPLR 3222).
*61 The Board of Estimate and Contract of the City of Borne is composed of the Mayor, the President of the Common Council, both of whom are elected officials, together with the City Engineer, the City Treasurer, and the Corporation Counsel, these three being appointed officials. The board is vested with the power to set municipal salaries. The salaries so set are submitted as items in the budget that may be accepted or rejected on an item basis by the Common Council of the city. By City Charter, the latter is specifically denied any power to increase or diminish the salaries proposed.
The plaintiff, the bargaining agent for the city police department, commenced negotiations for a wage increase with the Board of Estimate and Contract. The negotiations were fruitless and the Taylor Law procedure (see Civil Service Law, art. 14) for settling disputes was followed up to the point (Civil Service Law, § 209, subd. 3, par. [e]) where the Mayor would have to submit the findings and recommendations of the fact finder, together with his recommendations, “ to the legislative body of the government involved ’ ’, the legislative body would have to hold a public hearing and then take “ such action as it deems to be in the public interest ”.
Given the power of the Board of Estimate and Contract to propose and the power of the Common Council to dispose, the Mayor was in a quandary to which he should send the findings and the recommendations. He sought direction from the New York State Public Employment Belations Board whose counsel opined that since the City Charter vested legislative powers in the Common Council, it was the legislative body under the Civil Service Law.
The Mayor sent the findings and recommendations to the Common Council which held a public hearing and then passed an ordinance increasing police department salaries. The Mayor vetoed on the ground that the Common Council by attempting to set salaries had usurped the charter-given authority of the Board of Estimate and Contract.
This action seeks a declaration that the Mayor’s veto is null and void on the ground that, in case of a negotiations impasse, the Taylor Act, in effect, reposes salary fixing power in the Common Council even though it might otherwise rest in the Board of Estimate and Contract.
Before we can get to this point, however, we must raise the question whether any veto of a Mayor can be held null and void for failure to measure up to some standard. Is not a Mayor entitled to veto on any ground he chooses as long as *62 he informs the Common Council of his reason, whatever it is, so that it may override if it elects to do so? (See Municipal Home Buie Law, § 21.) We avoid this question, though, in order to meet the problem presented by the stipulated facts.
The Mayor was correct ^n submitting the findings and recommendations to the Common Council as “ the legislative body ”. It is constitutionally required that the legislative body of a local government be elected (N. Y. Const., art. IX, § 1, subd. [a]) and the Common Council has been statutorily designated the legislative body (Municipal Home Buie Law, § 2, subd. 7; Borne City Charter, art. IV, § 26; L. 1921, ch. 679, as amd.).
The Common Council acted beyond its charter-given powers when it enacted an ordinance setting municipal salaries. We dannot read the Taylor Act’s referral of the negotiation impasse to the Common Council to take ‘ ‘ such action as it deems to be in the public interest ’ ’ -as an enlargement of its usual powers. We construe the act’s referral to the Common Council as an invitation to it to take whatever action it is authorized to do, in this case, accept or reject the salary item in the budget proposed by the Board of Estimate and Contract. The Taylor Act was meant to mesh with existing budgetary procedures. ‘ ‘ It is a fundamental principle in government employment that collective negotiations and the resort to procedures to resolve an impasse be appropriately related to the legislative and-budget making process. ’ ’ (Final Beport, Governor’s Committee on Public Employee Belations, March 31, 1966, Part Three.)
The purpose of the referral is to get the impasse and the views of the parties into the political arena where the legislative body will be able to take them into consideration in its decision to reject or accept the proposed budget item. “ The employee organization and the administrators should take the remaining controversy to the legislative and political arena rather than to the streets. In the ordinary course, the legislature reviews and evaluates contending views in budget making and in the specification of conditions of work for public employees ” (Final Beport, Governor’s Committee on Public Employee Belations, March 31, 1966, Part Three).
If the Common Council feels the plaintiff’s salary demands are proper, and if they are different from those proposed in the budget, the council is authorized to vote down the salary item in the budget. It is not authorized to set salaries in the face of the City Charter’s prohibition.
The complaint must be dismissed.